## The F. & P. M. No. 2.

### Starke et al. v. The F. & P. M. No. 2.

*(District Court, E. D. Wisconsin. January 8, 1891.)*

**1. Collision between Steam-Vessels — Bend in River — Duty of Descending Steamer.**

An ascending propeller, when approaching a dangerous bend near the mouth of the Manistee river, gave the signal required in such case by rule 5 of pilot rules for lakes and sea-board, and, receiving no answer, proceeded. A descending steamer failed to give the signal, and there was evidence that the signal from below was not heard by her officers. When still 1,000 feet above the bend, she was notified by another that the propeller was coming up the bend, but proceeded on her course, and shortly afterwards signaled that she desired to pass on the south side, which was promptly answered by assenting signals. At this time the propeller had entered so far into the bend that it would have been dangerous to retire, and, proceeding, a collision occurred. *Held*, that the descending steamer was in fault.

**2. Same—Interpretation of Signals.**

The assenting signal of the propeller could not be regarded as an invitation to proceed, since it was required by the rules, and was merely an indication that the steamer's desire to pass on the south side of the river was known and acquiesced in.

In Admiralty.

*Mr. Krause*, for libelants.

*A. J. Dorel* and *F. M. Hoyt*, for claimant.

Jenkins, J. This cause involves an inquiry touching a collision between the propellers Joys and F. & P. M. No. 2, in the afternoon of the 17th October, 1888, in the Manistee river. The *locus in quo* of the collision was the same as in *Canfield* v. *The F. &. P. M. No. 2, ante*, 698, (herewith decided,) and is sufficiently described in the opinion filed in that cause. The F. & P. M. No. 2 upon entering the river sounded the signal required by rule 5, stated at length in the opinion in the *Canfield Case, supra*, and, receiving no response, proceeded on her course. The Joys, descending the river, failed to give the signal required by rule 5. When at a point above Brook's mill, and over 1,000 feet above the bend, she was notified by the tug Canfield that the F. & P. M. No. 2 was coming up into the bend. The master of the Joys responded: "I will give them a wide berth," and, as he states, checked the Joys down, "thinking the black boat would pass the bend before I got there, I was so far away; that was my idea at the time." Shortly or immediately after, the Joys sounded two blasts of her whistle, receiving prompt and assenting answer from the F. & P. M. No. 2, then opposite the Canfield salt-sheds, at the foot of the bend. There was a pile-driver lying at the upper end of the Canfield salt-shed, crossways in the river, the stern extending about 75 feet beyond the dock line. The Joys was some 600 feet above the bend, about opposite Kitzinger's dock, when she first sighted the F. & P. M. No. 2. Both vessels proceeded, the Joys hugging the south side of the channel so nearly as she could. The F. & P. M. No. 2 kept close to the north bank, "smelt the shoal water," and be-

gan to sheer. A collision then seeming inevitable, both vessels commenced to back. The F. & P. M. No. 2, owing to the force of the current, sheered to starboard, and directly across the bows of the Joys, the stem of the Joys striking the F. & P. M. No. 2 on the port bow.

It is unnecessary to consider the disputed question of the speed of the Joys, as upon other grounds I think this libel cannot be sustained. That the F. & P. M. No. 2 sounded the signal required by rule 5 is established. That it was not heard by the Joys is negative testimony, not countervailing the positive testimony in that behalf. The signal was heard by one witness upon the shore above the bend. It should have been heard upon the Joys. Attention to duty would have enabled the master of the Joys to hear it, if he did not. He admits that he did not sound the signal required. As towards an ascending boat sounding the signal the Joys was in fault. Failing such signal by the Joys, the F. & P. M. No. 2 had a right to assume that no vessel was descending, and to proceed upon her course up and around the bend. The Joys, when over 1,000 feet above the bend, was notified by the tug of the approach of the ascending boat, then not visible to the Joys. The latter vessel, being in fault in not previously giving the required signal, and not knowing the position of the ascending boat, should have stopped, and should not, by proceeding, have experimented in the face of danger. He assumed that the ascending vessel would make the bend before he got there. He should have made that assumption certain by stopping until that event had occurred. It was rash, hazardous, and negligent to do otherwise under the circumstances. When the signal of two blasts was given, the F. & P. M. No. 2 could not stop with safety. She was too far into the bend, and would have collided with the pile-driver. It was the duty of the Joys to stop, for she could safely have then so done, and her negligence had placed the other in a position which rendered it hazardous to stop.

It is a mistake to suppose that the assenting answer of the F. & P. M. No. 2 to the signal of the Joys was an invitation for the latter to proceed. She was required by rule to answer the signal. The answer was only an acknowledgment that the intention of the Joys to pass on the south side of the channel was known and acquiesced in. *The Garlick*, 20 Fed. Rep. 647; *The Rescue*, 24 Fed. Rep. 44; *The Greenpoint*, 31 Fed. Rep. 231; *The Admiral*, 39 Fed. Rep. 574. The F. & P. M. No. 2 did nothing in prevention of that design that did not result from the position she was placed in with respect to the Joys through the fault of the latter. The limit of obligation upon the F. & P. M. No. 2 was, when danger of collision was apparent, to adopt such preventive measures as were possible under the circumstances. This she did. The Joys was the offending vessel, by whose fault the situation was produced, rendering collision inevitable.

It is also insisted that the F. & P. M. No. 2 was in fault in not sounding danger signal upon receiving the signal of the Joys, according to rule 3. There is no ground for this contention. There was no misunderstanding of the course or intention of the other, and in such case only is

the rule applicable. The signal by the Joys was merely a notification that she chose to pass on the south side. This was assented to. The danger of meeting in the bend was notorious, and as apparent to one vessel as the other. A signal of danger would have given no warning to the Joys that she had not already received. Her master had expected to pass the ascending boat above the bend. He knew she was approaching and entering the bend. He knew that a meeting in the bend was hazardous. He would not stop when he could safely do so, although his omission of duty had produced the situation. He preferred to experiment with known danger, and the consequences must fall where they justly belong.

The libel will be dismissed.